## 47913. MASON v. SERVICE LOAN & FINANCE COMPANY.

EBERHARDT, Presiding Judge. Service Loan & Finance Company, a licensee under the Industrial Loan Act (Ga. L. 1955, p. 431 as amended; Code Ann. § 25-301 et seq.), brought suit on a promissory note against Loran Mason, seeking to recover the principal sum of $102.85, with no claim for interest or attorney fees. A default judgment was entered for the amount sued for, and defendant later filed his motion to set the judgment aside on the grounds that the note sued upon was void under the Industrial Loan Act in that it demanded 13 payments of $17 each ($221) in payment of a $204 debt, and that it revealed a premium charge for a "level term" credit life insurance policy rather than for a "declining term" policy in violation of Ga. L. 1955, pp. 431, 441 (c) (Code Ann. § 25-315 (c)). The trial court denied the motion to set aside, and defendant appeals. *Held:*

1. "A motion to set aside must be predicated upon some nonamendable defect which does appear upon the face of the record or pleadings. To be subject to motion to set aside, it is not sufficient that the complaint or other pleading fails to state a claim upon which relief can be

granted, but the pleadings must affirmatively show that no claim in fact existed." CPA Section 60 (d) (Code Ann. § 81A-160 (d)). As defendant recognizes under the record here, it must appear that the note sued upon was made in violation of the Industrial Loan Act rendering it void on its face under Ga. L. 1955, pp. 431, 444 (20) (Code Ann. § 25-9903).

2. In support of his contention that the note demanded 13 payments of $17 each (a total of $221) in payment of a debt of $204, it is pointed out that the first payment was due March 25, 1971, with final payment due March 25, 1972, making a total of 13 monthly payments. However, this contention is without merit since the note provides for 10 monthly instalments of $17 each, plus one instalment of $17 due March 25, 1971, and one due March 25, 1972, or a total of 12 instalments of $17 each equaling $204. While it appears that a typographical error may have been made by scheduling the last payment on March 25, 1972 rather than on February 25, defendant can hardly complain of it since it allowed him to make 12 payments over a period of 13 months rather than 12 months, with no additional charge of interest. Certainly no usury appears here, but only an error in the manner of repayment in defendant's favor.

As to how the contract made under the Small Loan Act is to be construed, we held in *Southern Loan Co. v. McDaniel,* 50 Ga. App. 285, 286 (177 SE 834) that "An intention contrary to the law should not be read into a contract by placing such a construction upon a provision therein, when the provision is just as susceptible of a construction that will show a lawful intention on the part of the parties."

3. Defendant contends that Ga. L. 1955, pp. 431, 441 (c) (Code Ann. § 25-315 (c)) requires "declining term" life insurance, and prohibits "level term" life insurance, on loans made under the Industrial Loan Act, and that the

Rules of Comptroller General, Industrial Loan Department (Official Compilation, Rules and Regulations of the State of Georgia § 120-1-11.02), providing that "credit level term life insurance or group credit level term life insurance" may be written as security on loans made under the Act, are not authorized by Ga. Laws 1955, pp. 431, 441 (c) (Code Ann.§ 25-315 (c)). However, we can find no prohibition in that section of the Act, which is too lengthy to quote here, against the writing of "level term" life insurance on loans made under the Act. It does provide that the amount of life insurance *"shall not exceed the amount of the loan, including charges,* to be secured." The "Commissioner is hereby authorized and directed to promulgate rules and regulations to effectuate this provision in accordance with the intent and spirit thereof," and "Premiums paid or to be paid pursuant to the authority of this subsection shall not constitute interest." The Insurance Code contains prohibitions with respect to certain classes of credit insurance (Ga. L. 1960, pp. 289, 744; Code Ann. § 56-3304 (1, 2)), but the limitations set forth there are not applicable "to insurance regulated under the Georgia Industrial Loan Act as to loans made under that Act." Ga. L. 1960, pp. 289, 744 (Code Ann. § 56-3304 (3)). While defendant makes a forceful argument as to why "level term" life insurance *should not* be allowed with respect to loans made under the Act, we are not authorized to insert such a prohibition into the statutes.

Further, it is to be noted that if the General Assembly had intended to limit the kind of insurance to be permitted to declining term, it would have been an easy and simple thing to have used that term instead of "reasonable" in specifying what insurance may be required. It did not do so, and we must assume that this failure was deliberate and intentional. The term "reasonable" connotes more than one possible

meaning, as is so often evidenced by statements in our decisions that "the minds of reasonable men may differ."

"Reasonable" is a relative term and does not fit neatly into a mathematical cubicle. Witness, for example, the terms "reasonable care," "reasonable attorney's fees," "reasonable notice," "reasonable doubt," "reasonable fears," "reasonable time," "reasonable expenses," "reasonable amount" for temporary alimony and child support, "reasonable funeral expense," "reasonable allowance" for depletion, "reasonable value," "reasonable rates" for utilities, "commercially reasonable," "reasonable search and seizure," and many others which we constantly use in our daily business and legal relationships. If the commissioner was to administer the Act, it was therefore his duty to interpret it and define what would be "reasonable insurance" in connection with loans made under it, *not exceeding the amount of the loan and charges,* and what the rates should be. Code Ann. § 25-315 (c).

The amount of the level term insurance here did not exceed the amount of the loan at the time the contract was made and the insurance was obtained. Thus, it was reasonably tied to the loan or the contract, complying with both the statute and the commissioner's regulations.

This, we think, underlies the promulgation of the regulation by the small loans commissioner specifying the types of insurance allowable—level term and declining term—and fixing the premium rates on each. Under his interpretation of the statute these were not unreasonable and were permissible. The administrative interpretation of a statute by an administrative agency which has the duty of enforcing or administering it is to be given great weight. *Solomon v. Commrs. of Cartersville,* 41 Ga. 157; *State of Georgia v. Camp,* 189 Ga. 209 (6 SE2d 299); *Wilson v. Pollard,*

190 Ga. 74 (8 SE2d 380); *Robbins v. Welfare Finance Co.,* 95 Ga. App. 90, 95 (96 SE2d 892); *Belton v. Columbus Finance &c. Co.,* 127 Ga. App. 770, 772 (195 SE2d 195).

The General Assembly has met and adjourned several times since the loan commissioner interpreted the statute and issued regulations under which the industrial loan industry has operated and millions of dollars of contracts have been made. "If any change in that interpretation is wise or desirable, the matter addresses itself to the General Assembly where the change could be made in a manner that would not wipe out vested rights under contracts honestly made and in good faith relying upon what [the commissioner has] said the Act means." *Robinson v. Colonial Discount Co.,* 106 Ga. App. 274, 276 (126 SE2d 824). We must assume that his interpretation was in keeping with the legislative intent, for the General Assembly has not in any wise amended the statute to exclude all types of insurance as security for the loans save declining term. *Undercofler v. Eastern Air Lines,* 221 Ga. 824, 831 (147 SE2d 436); *Thompson v. Eastern Air Lines,* 200 Ga. 216, 224 (39 SE2d 225).

The statute is in derogation of common law, *Denson v. Peoples Bank,* 186 Ga. 619 (198 SE 666), for there was no such limitation upon the right to contract at common law, and where there is limitation by a statute which is capable of more than one construction, the statute must be given that construction which is consistent with the common law. *Anderson v. Albany & N. R. Co.,* 123 Ga. 318 (51 SE 342); *Robinson v. Bryson & Sons,* 45 Ga. App. 440, 443 (165 SE 158); *Griffin v. Vandegriff,* 205 Ga. 288, 294 (53 SE2d 345). Restriction upon the right is permissible when it is in the public interest. *Black v. Horowitz,* 203 Ga. 294 (46 SE2d 346); *Orkin Exterminating Co. v. Dewberry,* 204 Ga. 794 (51 SE2d 669). But the restriction must be explicit or by

*necessary* implication, and not left to speculation. *Brown v. Five Points Parking Center,* 121 Ga. App. 819, 821 (175 SE2d 901); Restatement, Contracts, § 580.

This construction favors both the borrower and the lender, for it preserves to each his right to contract to the extent that it is not specifically prohibited or limited by the statute.

It must not be overlooked, either, that under the commissioner's interpretation of the statute and his regulations issued in conformity therewith, the borrower must ask for insurance coverage in writing, and he has the option as to whether he will obtain level term or declining term. There was such a request there and the borrower elected to take level term. We must note, too, that in the event of his death after a portion of the indebtedness is paid the full amount of level term insurance is paid by the insurer, dividing it to the lender in the amount of the balance due and the remainder to the estate of the borrower.

We think the statute does not require a different interpretation than that which the commissioner has given it.

*Judgment affirmed. Bell, C. J., Pannell, Deen and Clark, JJ., concur. Evans, J., concurs in the judgment. Hall, P. J., Quillian and Stolz, JJ., dissent as to Division 3.* ARGUED FEBRUARY 12, 1973 — DECIDED APRIL 3, 1973 — REHEARING DENIED APRIL 19, 1973 —

*Sidney L. Moore, Jr., Anthony R. Cueto, Bettye Kehrer, John Cromartie,* for appellant.

*W. J. Patterson, Jr.,* for appellee.

HALL, Presiding Judge, dissenting. This case involves the law on "Moneylenders and Pawnbrokers" and the construction of statutes enacted on this subject. "The small-loan acts in the various jurisdictions were enacted to mitigate rather than eradicate the evils incident to the

business of lending money in small amounts to those who, having little to offer as security except their future earnings, or used and worn articles of little value to anyone other than the borrowers, are unable to obtain funds readily. The purpose of the acts is to afford the borrower the greatest practicable measure of protection, and since the acts are remedial in their nature they are to be given a liberal construction in order to effectuate the legislative purpose. In permitting small-loan companies to charge interest in excess of the normal commercial rate, the legislature has imposed a duty upon them to deal fairly with borrowers, and in making loans they must do so with scrupulous adherence to the terms of the statute... On the other hand, since the statutes are penal in character, and are intended to assist the borrower by encouraging legitimate capital, the lender is to be protected against any unreasonable extension of the small-loan statute, and a prohibition in the statute should not be extended beyond the fair import of its terms." 54 AmJur2d "Moneylenders and Pawnbrokers" 615, 616, § 13.

I dissent to Division 3 of the opinion which holds that "level term" life insurance is not prohibited under the Industrial Loan Act. Code Ann. § 25-315 (c) provides: "A licensee may accept as security for any loans or advance made hereunder... reasonable insurance on the life... of the principal party obligated on any such loan or advance; provided, however, that any such insurance shall be reasonably related ... to the amount and term of the loan ... Provided, further, the amount of life... insurance required as security for loans made under this Chapter shall not exceed the amount of the loan, including charges, to be secured." The section also grants power to the Industrial Loan Commissioner to "promulgate rules and regulations to effectuate this provision in accordance with the spirit and intent thereof."

The commissioner, by regulation, authorized the use of both "Reducing term life insurance" and "Level term life insurance." The former covers the actual indebtedness at the time of death. The latter covers the face amount of the contract at all times. The former cannot exceed one percent of the face amount of the loan. The latter cannot exceed two percent of the face amount of the loan. In other words, the latter costs twice as much as the former.

The question here is whether the contract, which shows on its face that the borrower was charged for "level term life insurance," is unreasonable under the Industrial Loan Act and therefore void as a matter of law. Code Ann. § 25-9903. The regulation cannot give that which the statute prohibits. *Brown v. Quality Finance Co.,* 112 Ga. App. 369, 371 (145 SE2d 99); *Elder v. Home Building & Loan Assn.,* 188 Ga. 113 (3 SE2d 75, 122 ALR 738).

What is meant by the words "reasonable insurance on life" as "security" for the indebtedness? "The word 'reasonable' connotes action according to the dictates of reason, such as is just, fair and suitable in the circumstances. When employed to describe the means which are used to achieve a legitimate end it suggests not necessarily the best or only method, but one fairly appropriate, at least under all the circumstances, and when used in connection with legislative measures it signifies such measures as are fit and appropriate to the end in view." 75 CJS "Reasonable," p. 635. The "end in view" sought by the legislature in restricting the use of credit life insurance as security for a small loan to "reasonable insurance on the life" was to provide the lender with "reasonable security" while at the same time prohibiting it from selling to the borrower, at an additional premium, any more credit insurance than is necessary to make the creditor whole should the debtor die. Any authorization or use of level term life insurance on a loan paid off in instalments is contrary to the Industrial Loan Act and void on its face.

In my opinion the trial court erred in denying defendants motion to set aside the default judgment.

I am authorized to state that Judges Quillian and Stolz concur in this dissent.